UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVON WHOLESALE SUPPLY, INC. ) <br> ) <br> v. ) <br> ) <br> MONMOUTH REALTY COMPANY, ) <br> B.D. NIMS LUMBER COMPANY, ) <br> RICHARD F. NIMS and LOIS NIMS ) <br> ) | C.A. No. 04-30227-KPN |

**JOINT STATEMENT PURSUANT TO
LOCAL RULE 16.1 AND F.R.C.P. 26(F)**

Parties:        Avon Wholesale Supply, Inc., Plaintiff

               Monmouth Realty Company, B.D. Nims Lumber Company, Richard F.
               Nims and Lois Nims, Defendants

Date Complaint
Filed:          November 18, 2004

Date Complaint
Served:         November 22, 2004 (as to all Defendants)

Date of
Defendants'
Appearances:    December 14, 2004 (as to all Defendants);

       Pursuant to Federal Rules of Civil Procedure 16(b), 26(f), and Local Rule 16.1, a conference was held on the 12th day of January 2005. The participants were: C. Thomas Furniss, counsel for the Plaintiff and Mark E. Draper, counsel for the Defendants.

**I.     Certification**

       Undersigned counsel certify that they have conferred with each other and their respective clients with a view to establishing a budget for the costs of conducting the full course, and various alternative courses, of the litigation and to consider that resolution of the litigation through the use of alternative dispute resolution programs such as those outlined in Local Rule 16.4.

## II. Jurisdiction

A.  <u>Subject Matter Jurisdiction</u>: 28 U.S.C. § 1332. There is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

B.  <u>Personal Jurisdiction</u>: Personal jurisdiction is not contested in this matter. All Defendants are/or were domiciled in this state and a significant portion of the events that gave rise to the instant lawsuit occurred here.

## III. Case Summaries

A.  <u>Summary Position of Plaintiff</u>: The Plaintiff purchased real property from the Defendant Monmouth Realty Company located at 253 Baldwin Street in West Springfield, Massachusetts in 1998. Prior to the closing of the purchase, it was discovered that there was reportable environmental contamination in the soil and groundwater at the site. As part of the purchase agreement, Defendant Monmouth agreed to indemnify buyer for and hold it harmless from any environmentally related damages or any loss arising from the presence of hazardous materials at the site. Shortly before the time of the closing, the parties also entered into an Agreement and Escrow under the terms of which the seller, Monmouth, deposited $150,000.00 to be used toward the expenses of environmental remediation.

Prior to the closing, the parties also agreed to the selection of a particular environmental consultant to analyze the contamination problem and to begin treatment of that problem, while consulting fully with both the seller and the buyer.

Subsequent to the closing – the Deeds being dated May 22, 1998 – Monmouth filed several required forms with the Massachusetts Department of Environmental Protection in which representations were made about the ability of Monmouth, technically and financially, to complete remediation of documented contamination. Some of these reports were filed subsequent to the dissolution of Monmouth which was effective December 31, 1998.

In the fall and early winter of 1998, there were certain indications at the site of the soil and groundwater contamination that suggested that the scope and possibly nature of the environmental problem might be larger and different from that which had been contemplated previously by both parties. Beginning in December of 1998, Plaintiff communicated its concerns to Monmouth, including the communication contained in a letter from Plaintiff to Monmouth dated February 10, 1999 and attaching the environmental consultant's report that the total projected costs of remediation at that time were $173,022.00.

2

Subsequent to the February 10, 1999 letter, Monmouth was revived twice based on the basis that, subsequent to the dissolution on December 31, 1998, the Corporation had received notice of a possible claim against it arising out of environmental issues associated with the real estate which had been sold.

The Plaintiff's claims are, very briefly:

1. Count One: Plaintiff claims that it has a private right of action against theDefendant Monmouth under Massachusetts Environmental Statues, claiming that Monmouth is the "responsible party" for completing remediation of the documented contamination problem.

2. Count Two: Plaintiff claims breach of contract against Monmouth based on the undertaking by seller in the Purchase and Sale Agreement to indemnify and hold buyer harmless from all costs of the environmental cleanup.

3. Count Three: Plaintiff claims a breach of the Escrow and Indemnity Agreement which contains an undertaking similar to that contained in the Purchase and Sale Agreement as referred to above.

4. Count Four: Plaintiff claims that the conveyance by Monmouth to Defendants Richard F. Nims and Lois Nims of the vast majority or all of its net worth following dissolution of the Corporation on December 31, 1998 was fraudulent inasmuch as it was effected for the purpose of defrauding the Plaintiff and preventing it from collection of amounts due it under the two contracts referred to in Counts Two and Three.

5. Count Five: Plaintiff claims personal liability against Defendant Richard F. Nims inasmuch as Plaintiff claims that Mr. Nims, in the execution and delivery of several required forms to the Massachusetts Department of Environmental Protection misrepresented the status of Monmouth at a time when it had not been revived and remained dissolved; and that he was operating as a personal alter-ego of the Defendant Monmouth.

6. Count Six: Plaintiff claims that Defendant Richard F. Nims, in the execution and delivery of the forms referred to in Count Five to the Department of Environmental Protection inasmuch as he represented in those forms that the Defendant Monmouth – even though its assets had been distributed to its shareholders – still have the financial ability to proceed with the complete response actions to remediate environmental problem fully.

/32628/3/60348v1
07/26/04-SPT/

7. Count Seven: Plaintiff claims that Defendant B.D. Nims Lumber Company has "operator liability" in favor of Plaintiff under the Massachusetts Environmental Statues inasmuch as it "caused" the contamination by its acts and omissions in the course of operating a lumber yard on the premises for many years prior to the sale to Plaintiff.

8. Count Eight: Plaintiff claims that the conveyance by B.D. Nims Lumber Company to Defendants Richard F. Nims and Lois Nims of the vast majority or all of its net worth following dissolution of the Corporation on December 31, 1998 was fraudulent inasmuch as it was effected for the purpose of defrauding the Plaintiff and preventing it from collection of amounts due it under the two contracts referred to in Counts Two and Three.

9. Count Nine: Plaintiff alleges that, in accordance with Massachusetts Statutory Law, it is entitled to reimbursement from the Defendant B.D. Nims Lumber Company for the entirety of Plaintiff's response costs for cleanup of the contamination.

B. Summary Position of Defendants: Defendant Monmouth entered into Purchase and Sale Agreements in August 1997 to sell its property at 253 Baldwin Street, West Springfield (the "Property") to Avon Wholesale Supply, Inc. ("Avon"). Avon retained Environmental Risk Ltd. ("ERL") to perform an environmental site assessment of the Property as part of its due diligence. ERL's assessment indicated gasoline contamination of the Property in the area surrounding a former gasoline underground storage tank. After much negotiation regarding quantifying and apportioning costs and risks in the environmental matter with regard to the real estate transaction, Monmouth entered into an Escrow and Indemnity Agreement dated April 27, 1998 with Avon and the Avon Building Supply Co. The Agreement established a $150,000.00 escrow fund to be held by Doherty, Wallace, Pillsbury & Murphy ("Doherty Wallace"), Avon's attorneys in the real estate transaction, to fund completion of remedial work at the Property. On May 22, 1998, Avon closed on its purchase of the Property from Monmouth.

Correspondence from ERL in November 1998, which Avon forwarded to Defendant Nims, then President of Monmouth, indicated that ERL was looking to complete clean up work at the site by February 1999 with total costs of less than $70,000.00, well under the escrowed amount. In late 1998, Monmouth's accountants, Pricewaterhouse Coopers inquired of Attorney Paul Doherty of Doherty Wallace with regard to dissolving Monmouth and Defendant B.D. Nims Lumber Company and distributing their respective assets to shareholders. Defendants were advised by their accountants that attorneys at Doherty Wallace had advised that the escrowed funds would be sufficient to fund remaining obligations under the Escrow and Indemnity Agreement and that dissolution of the corporations and distribution of their assets could proceed. In fact, Attorney Doherty filed Articles of Dissolution for Monmouth and B.D. Nims Lumber

4

Company in December 1998 with the Massachusetts Secretary of State and the assets of those corporations were distributed to their shareholders.

Subsequently, Avon forwarded correspondence to Defendant Nims indicating that response costs to clean up gasoline contamination at this site might exceed the $150,000.00 escrow. Documents provided Defendants' attorneys by the Escrow Agent Doherty Wallace indicate that Avon's environmental response costs exceeded the $150,000.00 escrow amount at some point after October 31, 2001.

Since at least August 2002, Avon's attorneys Robinson & Cole and then Furniss & Quinn have asserted a claim against Defendant Nims alleging personal liability arising out of the timing of the dissolution of Monmouth and distribution of its assets. Defendants' attorneys have repeatedly advised Avon that Nims appropriately and reasonably relied upon the guidance and advice of Monmouth's professional accountants, in consultation with attorneys at Doherty Wallace, and no improper action was ever taken by him or any of the other Defendants in connection with this matter. Furthermore, Avon has been repeatedly advised that there is plainly and demonstrably no basis to assert that Defendant Nims intended to deceive or defraud Avon. In sum, there is no factual or legal basis for the Defendants to be liable to Avon for the claims set forth in the Complaint. Further, Defendants attorneys have repeatedly and thoroughly set forth in correspondence with Avon's attorneys the reasons that their claims were without merit. Despite this Avon has willfully ignored the demonstrable absence of any meritorious basis for such claims and commenced this action.

## IV. Case Management Plan

A.  Standing Order on Scheduling in Civil Cases: The parties propose to modify the Standing Order as set forth below.

B.  Scheduling Conference with the Court: A Scheduling Conference with the Court is presently scheduled for January 21, 2005 at 12:00 p.m.

C.  Early Settlement Conference:

   1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice.

   2. The parties do request an early settlement conference.

   3. The parties do not express a preference for a presiding officer or Judge at a settlement conference at this time.

   4. The parties do not request ADR.

E.     Amendment of Pleadings:

1. Each of the parties will be allowed until February 21, 2005 to amend its current pleadings without the need to file papers seeking leave to do so.

F.     Discovery:

1. The parties anticipate that discovery will be needed on the following subjects:

   a. Communications from the Plaintiff to any of the Defendants prior to December 31, 1998 whether the scope and nature of the environmental problems at 253 Baldwin Street were significantly greater and different than had previously been understood, particularly with respect to the likelihood of response costs exceeding the sum escrowed under the Monmouth Realty Avon Agreement.

   b. The timing of distributions of property from both Monmouth Realty Company and B.D. Nims Lumber Company following their respective dissolutions to their respective shareholders.

   c. The circumstances of the representations made by Defendant Richard F. Nims to the Massachusetts Department of Environmental Protection on the several required environmental filings that he executed and delivered to the Department on behalf of Defendant Monmouth Realty Company.

   d. The financial status of Defendant Monmouth as of the specific dates on which representations were made by Defendant Richard F. Nims that Monmouth was financially capable of completing the required remediations.

   e. The history of the conduct of its business and the patterns of commission or omission of certain acts regarding the handling of gasoline, petroleum or hazardous materials by Defendant B.D. Nims Lumber Company at the site prior to conveyance of the real estate by Defendant Monmouth to the Plaintiff.

   f. The role of Defendants' accountant and attorneys in connection with the dissolution of the corporations and distribution of assets.

   g. The role of environmental consultants in the assessment of contamination and estimates of the costs to remediate said contamination.

/32628/3/60348v1
07/26/04-SPT/

2. Written discovery shall commence immediately and will be completed on or before March 31, 2005.

3. Automatic disclosure required by Rule 26 shall be completed by February 22, 2005.

4. The parties anticipate that the Plaintiff will require a total of seven (7) depositions of fact witnesses and that Defendants will require a total of four (4) depositions of fact witnesses. The depositions will be completed by June 1, 2005. This number may be modified by automatic disclosure.

5. The parties may serve up to 60 Interrogatories.

6. Plaintiff will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by June 15, 2005. Depositions of such experts will be completed by July 15, 2005.

7. Defendants will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P 26(a)(2) by September 1, 2005. Depositions of such experts shall be completed by October 1, 2005.

G. <u>Dispositive Motions</u>: Dispositive motions will be filed on or before October 3, 2005.

H. <u>Joint Trial Memorandum</u>: The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed thirty days from the date of any ruling on dispositive motions or, if no such motion is filed, by November 2, 2005.

## V.   Trial Readiness

The case will be ready for trial by: January 6, 2006.

As officers of the Court, the undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

PLAINTIFF, AVON WHOLESALE SUPPLY, INC.

By: *C. Thomas Furniss /by Louis S. Moore*
C. Thomas Furniss CT00028
(c.thomas.furniss@snet.net)
FURNISS & QUINN, P.C.
248 Hudson Street
Hartford, CT 06106
Tel:  (860) 527-2245
Fax:  (860) 241-1032

Dated: January 18, 2005

DEFENDANTS, MONMOUTH REALTY COMPANY, B.D. NIMS LUMBER COMPANY, RICHARD F. NIMS AND LOIS NIMS

By: *Louis S. Moore*
Mark E. Draper, BBO# 134540
(mdraper@admlawfirm.com)
Louis S. Moore, BBO# 353050
(lmoore@admlawfirm.com)
ANNINO, DRAPER & MOORE, P.C.
1500 Main Street – Suite 2504
P.O. Box 15428
Springfield, MA 01115-5428
Tel:  (413) 732-6400
Fax:  (413) 732-3339

Dated: January 18, 2005

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by *electronic mail* & 1st class mail on *January 18, 2005*

/32628/3/60348v1
07/26/04-SPT/